[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13284
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 4, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00280-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CELERINO GABRIEL-MARTINEZ,
BLAS ROMERO-BRAVO, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(August 4, 2008)

Before BIRCH, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Celerino Gabriel-Martinez, Artemio Castellon-Falcon, Juan Jose Valenzuela-Rodriguez, Blas Romero-Bravo, and Victor Perez-Duran appeal their convictions and 235-month sentences for conspiracy to posses with intent to distribute cocaine while on a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b), and possession with intent to distribute cocaine while on a vessel subject to the jurisdiction of the United States, in violation of 18 U.S.C. § 2, 46 U.S.C. § 70503(a). Appellants bring multiple issues on appeal, which we address in turn.[1] After review, we affirm their convictions and sentences.

I.

Castellon-Falcon, Romero-Bravo, and Perez-Duran assert the district court abused its discretion by prohibiting them from cross-examining a Government witness about his encounter with a second vessel on the date in question. Ordinarily, we review limitations placed on cross-examination for an abuse of discretion. *United States v. Orisnord*, 483 F.3d 1169, 1178 (11th Cir.), *cert. denied*, 128 S. Ct. 673 (2007). However, arguments raised for the first time on

---

[1] Gabriel-Martinez, Castellon-Falcon, Valenzuela-Rodriguez, and Perez-Duran attempt to adopt their codefendants' arguments. Under our rules, to adopt parts of other briefs, a party must describe in detail which briefs, and which portions of those briefs, he is adopting. 11th Cir. R. 28-1(f). Here, Appellants have not properly adopted their codefendants' arguments, as they have not specified which arguments, by which codefendants, they are adopting.

2

appeal are reviewed for plain error.  *United States v. Peters*, 403 F.3d 1263, 1270

(11th Cir. 2005).  To establish plain error, the defendant must

> show that there is (1) error (2) that is plain and (3) that affects
> substantial rights.  If all three conditions are met, an appellate court
> may then exercise its discretion to notice a forfeited error, but only if
> (4) the error seriously affects the fairness, integrity, or public
> reputation of judicial proceedings.

*United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003) (citations,

quotations, and alterations omitted).

Only relevant cross-examination is protected by the Sixth Amendment, and,

under the Confrontation Clause, a district court has wide latitude to impose

reasonable limits on cross-examination that is only marginally relevant.  *United*

*States v. Lyons*, 403 F.3d 1248, 1255-56 (11th Cir. 2005).  While a presumption

favors free cross-examination of a government "star" witness, the cross-

examination must be relevant.  *United States v. Phelps*, 733 F.2d 1464, 1472 (11th

Cir. 1984).  Evidence is relevant if it has "any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or

less probable than it would be without the evidence."  Fed. R. Evid. 401.

However, where the relationship between the evidence a defendant seeks to

introduce and his defense is too attenuated, the district court may exclude it, as

there comes a point when evidence no longer is relevant because the chain of

3

inferences is too long or attenuated. *United States v. Hurn*, 368 F.3d 1359, 1366 (11th Cir. 2004). In determining whether the Confrontation Clause is satisfied for impeachment purposes, we address whether a witness's credibility would have been significantly different in a reasonable juror's mind if defense counsel could have pursued the proposed line of cross-examination. *United States v. Diaz*, 26 F.3d 1533, 1539-40 (11th Cir. 1994).

A. Castellon-Falcon

Castellon-Falcon argues the district court erred in not permitting him to impeach Officer Wylie with his proffered testimony regarding the second vessel, but, at trial, his codefendant, Perez-Duran, argued the evidence was admissible because it was not hearsay and was relevant. Accordingly, Castellon-Falcon is asserting his impeachment argument for the first time on appeal, and we review it for plain error. *See Peters*, 403 F.3d at 1270.

While Castellon-Falcon asserts he was not seeking to question Officer Wylie about the second vessel to prove it had arrived to rescue him and his codefendants, at trial, he attempted to introduce the evidence to establish the second vessel was looking for friends that had been on a boat that sank. Accordingly, Castellon-Falcon was seeking to introduce the statements for the truth of the matter asserted, and they were hearsay. Fed. R. Evid. 801(c) (defining hearsay as a statement

4

offered to prove the truth of the matter asserted); Fed. R. Evid. 802 (stating hearsay is inadmissable, unless it falls within an exception to the general rule).

Additionally, solely based on Officer Wylie's proffered testimony, Castellon-Falcon would have invited the jury to infer that (1) he and his codefendants originally were on a fishing boat, (2) the vessel sank after they issued a distress call, (3) the go-fast vessel rescued them, (4) the second vessel was looking for the codefendants, and (5) the drug smugglers who operated the go-fast vessel were turned over to Mexico. The district court did not plainly err by finding this chain of inference was too attenuated to be relevant, as there was no evidence the defendants originally had been on another vessel, or the second vessel was looking for the defendants, and thus, the jury would have had to make these conclusions based on pure speculation. *See Lyons*, 403 F.3d at 1255-56; *Hurn*, 368 F.3d at 1366; *Phelps*, 733 F.2d at 1472.

Additionally, contrary to Castellon-Falcon's assertion, the court was not forcing Castellon-Falcon to choose between his Fifth Amendment right not to testify and his Sixth Amendment right to cross-examine Government witnesses, but was requiring that Officer Wylie's proffered testimony be relevant before Castellon-Falcon could address the subject on cross-examination, which would have required some evidence to support the inferences he would have asked the

5

jury to make. Therefore, the district court did not plainly err by prohibiting Castellon-Falcon from cross-examining Officer Wylie regarding the second vessel based on relevance grounds. *See Monroe*, 353 F.3d at 1349.

Finally, it does not appear the jury would have been left with a significantly different impression of Officer Wylie's credibility had Castellon-Falcon been permitted to use his proffered testimony for impeachment because Officer Wylie did not testify on direct examination that he did not see any other vessels on the date in question, but stated he did not see any other vessels from the time he left the Hamilton until he rescued the ten individuals. Therefore, his proffered testimony, that he saw another vessel several hours after he had rescued the ten individuals, was not an inconsistent statement. *See Diaz*, 26 F.3d at 1539-40. Further, Officer Wylie stated the vessel looked like a go-fast vessel, but he did not consider it to be one because it only had two engines, and thus, this would not have impeached his or Officer Santulli's trial testimony. *See id.*

B. Romero-Bravo

Contrary to Romero-Bravo's assertion, the court was not forcing him to testify before the evidence was relevant, but was requiring that Officer Wylie's proffered testimony be relevant before Romero-Bravo could address the subject on cross-examination, which would have required some evidence to support the

6

inferences that he would have asked the jury to make. Additionally, solely based on Officer Wylie's proffered testimony, Romero-Bravo would have invited the jury to infer that (1) he and his codefendants originally were on a fishing boat, (2) the vessel sank after he issued a distress call, (3) the go-fast vessel rescued him and his codefendants, (4) the second vessel was looking for the codefendants, and (5) the drug smugglers who operated the go-fast vessel were turned over to Mexico. The district court did not abuse its discretion by finding that this chain of inference was too attenuated to be relevant, as there was no evidence the defendants originally had been on another vessel, or the second vessel was looking for the defendants, and thus, the jury would have had to make these conclusions based on pure speculation. *See Lyons*, 403 F.3d at 1255-56; *Hurn,* 368 F.3d at 1366; *Phelps*, 733 F.2d at 1472.

C. Perez-Duran

Perez-Duran asserts the evidence regarding the second vessel was not hearsay because it would have been offered for impeachment, but, at trial, he attempted to introduce the evidence to establish that the second vessel was looking for friends that had been on a boat that sank. Accordingly, Perez-Duran was seeking to introduce the statements for the truth of the matter asserted, and the district court did not err in excluding them as hearsay. Fed. R. Evid. 801(c)

7

(defining hearsay as a statement offered to prove the truth of the matter asserted); Fed. R. Evid. 802 (stating hearsay is inadmissable, unless it falls within an exception to the general rule).

Additionally, Officer Wylie did not testify on direct examination that he did not see any other vessels on the date in question, but stated he did not see any other vessels from the time he left the Hamilton until he rescued the ten individuals. Therefore, his proffered testimony was not an inconsistent statement. Further, Officer Wylie's trial testimony that every go-fast vessel he had seen 400 miles off shore was transporting narcotics or large supplies of gasoline was not inconsistent with his statement the second vessel did not have narcotics or a large supply of gasoline, as he stated, in his proffer, that, while the vessel looked similar to a go-fast vessel, he did not consider it to be a go-fast vessel because it had only two engines. Because Officer Wylie's proffered testimony was not inconsistent with his trial testimony, it does not appear his credibility in the jurors' minds would have been significantly different had Perez-Duran been permitted to question Officer Wylie about his proffered testimony. *See Diaz*, 26 F.3d at 1539-40. Therefore, Perez-Duran's Confrontation Clause rights were not violated, and the district court did not plainly err in prohibiting reference to the second vessel. *See Monroe*, 353 F.3d at 1349; *Diaz*, 26 F.3d at 1539-40.

II.

Castellon-Falcon and Perez-Duran contend the district court abused its discretion by permitting the Government to comment, during its rebuttal closing argument, on their failure to testify and to make impermissible burden shifting comments during its closing argument. The government must not make burden-shifting arguments that suggest to the jury that the defendant has the burden to produce evidence or prove his innocence, but improper government remarks are rendered harmless by adequate jury instructions regarding the government's burden of proof. *United States v. Simon*, 964 F.2d 1082, 1086-87 (11th Cir. 1992). It is not a violation of a defendant's Fifth Amendment right not to testify when the government comments during its closing argument that defense counsel did not counter or explain certain evidence. *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998).

A.  Castellon-Falcon

Castellon-Falcon did not object to the Government's closing argument, and we review this issue for plain error. *United States v. Foley*, 508 F.3d 627, 637 (11th Cir. 2007), *cert. denied, Osborne v. United States*, 128 S. Ct. 1912 (2008) (reviewing whether the government shifted the burden of proof during closing argument for plain error when the defendant did not object). The district court did

not plainly err by not *sua sponte* declaring a mistrial based on impermissible burden shifting because, even if the Government's comment that Castellon-Falcon's counsel had not explained why he was 400 miles off shore in a vessel carrying cocaine was improper, the error was rendered harmless by the court's instructions to the jury that the Government had the burden of proving his guilt beyond a reasonable doubt and that Castellon-Falcon did not have to produce any evidence. *See Simon*, 964 F.2d at 1086-87. Additionally, the Government did not err by impermissibly commenting on Castellon-Falcon's right to remain silent, as its statements were directed at Castellon-Falcon's counsel's failure to address why Castellon-Falcon was on a go-fast vessel carrying drugs. *See Hernandez*, 145 F.3d at 1439.

B.  Perez-Duran

Perez-Duran did not object to the Government's closing argument, thus we review this issue for plain error. *See Foley*, 508 F.3d at 637. Contrary to Perez-Duran's assertions, the Government did not impermissibly comment on his right to remain silent, but commented on his counsel's failure to address why Perez-Duran was on a go-fast vessel carrying drugs, and thus, the Government's statements were not error. *See Hernandez*, 145 F.3d at 1439. Additionally, the district court did not plainly err by not *sua sponte* declaring a mistrial based on impermissible

10

burden shifting because, even if the Government's comment that Perez-Duran's counsel had not explained why he was 400 miles off shore in a vessel carrying cocaine was improper, any error was rendered harmless by the court's instruction to the jury that the government had the burden of proving his guilt beyond a reasonable doubt and that Perez-Duran did not have to produce any evidence. *See Simon*, 964 F.2d at 1086-87.

## III.

Gabriel-Martinez, Valenzuela-Rodriguez, Romero-Bravo, and Perez-Duran assert the evidence was insufficient to support their convictions. We review challenges to the sufficiency of the evidence *de novo*, with the evidence viewed in the light most favorable to the government. *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005). A defendant's conviction must be affirmed unless a jury could not, under a reasonable construction of the evidence, have found him guilty beyond a reasonable doubt. *Id.*

To convict a defendant for conspiracy to possess with intent to distribute cocaine, the government must establish beyond a reasonable doubt that (1) there was an illegal agreement, (2) of which the defendant was aware, and (3) he knowingly and voluntarily joined it. *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005). The agreement forming the basis of the conspiracy can be

11

proved by circumstantial evidence, including the conduct of the alleged participants. *United States v. Obregon*, 893 F.2d 1307, 1311 (11th Cir. 1990).

Mere presence is insufficient to support a conviction for conspiracy, but the jury is permitted to consider presence as a probative factor in determining whether the defendant knowingly and intentionally participated in a criminal scheme. *Hernandez*, 433 F.3d at 1333. A defendant's presence is more significant when the value of the cocaine is high, as it is very unlikely that drug smugglers would allow someone not involved in the conspiracy to be present on a vessel containing millions of dollars worth of cocaine. *United States v. Tinoco*, 304 F.3d 1088, 1123 (11th Cir. 2002).

To convict a defendant for possession with intent to distribute, the government must establish beyond a reasonable doubt that he knowingly possessed the controlled substance with the intent to distribute it, and possession may be proved through either actual or constructive possession. *Id.* To establish actual possession, the government must prove that the defendant had physical possession of, or dominion over, the drugs. *United States v. Leonard*, 138 F.3d 906, 909 (11th Cir. 1998). A defendant has constructive possession when he has "ownership, dominion or control over an object itself or dominion or control over the premises or the vehicle in which the object is concealed." *Hernandez*, 433 F.3d at 1333. A

12

jury may infer the defendant's intent to distribute from the quantity of drugs involved. *Id.*

The following factors are relevant in determining whether the evidence was sufficient to convict for conspiracy and possession charges when the defendant is present on a narcotics-laden vessel:

> (1) probable length of the voyage, (2) the size of the contraband shipment, (3) the necessarily close relationship between captain and crew, (4) the obviousness of the contraband, and (5) other factors, such as suspicious behavior or diversionary maneuvers before apprehension, attempts to flee, inculpatory statements made after apprehension, witnessed participation of the crew, and the absence of supplies or equipment necessary to the vessel's intended use.

*Tinoco*, 304 F.3d at 1123. Once the government establishes the vessel was transporting a large quantity of contraband, its burden of establishing the crew members were knowing participants in the smuggling operation is "relatively light," and showing just one of the other factors is sufficient to meet this burden. *Id.*

As an initial matter, the district court did not apply the wrong standard in assessing Romero-Bravo's motion for acquittal, as the cases that he cites state the government must prove, by more than slight evidence, the defendant was connected to the conspiracy. *See United States v. Malatesta*, 590 F.2d 1379, 1382 (5th Cir. 1979) (en banc); *United States v. Baker*, 432 F.3d 1189, 1231 n.49 (11th

13

Cir. 2005); *United States v. Toler*, 144 F.3d 1423, 1427 (11th Cir. 1998). Here, however, the district court was relying on this Court's holding that, once the government establishes a vessel was trafficking large quantities of narcotics, the government's remaining burden of establishing by substantial evidence that the defendant was a part of the conspiracy is light. *See Tinoco*, 304 F.3d at 1123.

As to Gabriel-Martinez, Valenzuela-Rodriguez, Romero-Bravo, and Perez-Duran, viewing the evidence in the light most favorable to the Government, it was sufficient to support their convictions for possession with intent to distribute, and conspiracy to do so, because the parties stipulated there was a large quantity of contraband, 509.12 kilograms of a mixture containing cocaine on the vessel, meaning the Government had the "relatively light" burden of establishing one of the other factors identified in *Tinoco*. *See Tinoco*, 304 F.3d at 1123. The Government satisfied this burden, as (1) Officer Cook testified the packages of cocaine were visible on the deck of the vessel; (2) the vessel refused to stop in response to the helicopter's flashing light, siren, instructions to stop over the load speaker, or warning shots fired in front of the vessel, which indicated the vessel was attempting to flee from the Coast Guard; (3) the individuals elected to set the vessel on fire and cling to a makeshift raft in the middle of the ocean, which, viewed in the Government's favor, is highly suspicious behavior; (4) Officer Wylie

14

testified the vessel was intercepted 400 miles from the nearest land, indicating the probable length of the voyage was long; and (5) Officer Foreman testified there was no fishing equipment in the debris, but lots of packages of cocaine were recovered. *See Tinoco*, 304 F.3d at 1123-24. Accordingly, the evidence was sufficient to support the convictions of Gabriel-Martinez,[2] Valenzuela-Rodriguez,[3] Romero-Bravo, and Perez-Duran on both counts.

## IV.

Castellon-Falcon, Valenzuela-Rodriguez, Romero-Bravo, and Perez-Duran contend the district court clearly erred in denying them minor-role reductions. We review the district court's denial of a minor-role reduction for clear error. *United States v. De Varon*, 175 F.3d 930, 934 (11th Cir. 1999) (en banc). The Guidelines provide a defendant's offense level should be decreased by two levels if he was a minor participant. U.S.S.G. § 3B1.2(b). The decision of whether or not a defendant is entitled to a § 3B1.2 reduction "falls within the sound discretion of the trial court," and the defendant bears the burden of proving he is entitled to a minor-

---

[2] Because the evidence was sufficient to support a conviction on both counts, and since the evidence was sufficient to find Gabriel-Martinez possessed the cocaine, we do not need to address whether Gabriel-Martinez aided and abetted.

[3] The fact the Government did not explain why five of the rescued individuals were turned over to Mexico does not mean the evidence was insufficient to support conviction, as the lack of an explanation does not change the fact Valenzuela-Rodriguez was on a vessel transporting over 500 kilograms of cocaine and trying to avoid apprehension. *See Tinoco*, 304 F.3d at 1123-24.

15

role reduction. *De Varon*, 175 F.3d at 939, 945. The district court determines whether a defendant played a mitigating role by measuring (1) his role against the conduct for which he is being sentenced, and (2) his role compared to that of other participants in the illegal activity. *Id.* at 945. In many cases, the first prong is dispositive, and the court does not need to consider the second prong. *Id.* Where a defendant's actual conduct is the only conduct being attributed to him, he cannot meet his burden of proof by pointing to a larger criminal conspiracy. *Id.* at 941. Additionally, the amount of drugs being delivered "is a material consideration in assessing a defendant's role." *Id.* at 943. Further, a district court may only look to other members of the conspiracy to the extent they are identifiable from the evidence and were involved in the relevant conduct attributed to the defendant. *Id.* at 944.

As to Castellon-Falcon, Valenzuela-Rodriguez, Romero-Bravo, and Perez-Duran, they each claim their role was minor as compared to the larger conspiracy involving the owners, producers, managers, and major transporters of the cocaine. The district court did not clearly err in finding that the defendants were not entitled to minor-role reductions, however, as they were only held accountable for their actual conduct, transporting 500 kilograms of cocaine. *See De Varon*, 175 F.3d at 939, 941.

16

V.

Castellon-Falcon and Gabriel-Martinez assert the district court abused its discretion by imposing unreasonable sentences. We review the sentence imposed by the district court for reasonableness. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). "Our review for reasonableness is deferential, and the party challenging the sentence has the burden of establishing unreasonableness." *Id.* The Supreme Court clarified that reasonableness review is synonymous with reviewing for an abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 594 (2007)

District courts first must correctly calculate, and consult, the Guidelines range, and, second, they must take into consideration the § 3553(a) factors. *Id.; United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to the victims.

*Talley*, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)). The district court need not state on the record that it has explicitly considered each factor, nor discuss each factor, as it is sufficient for the court to acknowledge it has considered the defendant's arguments and § 3553(a) factors. *Talley*, 431 F.3d at 786. Additionally, it is within the district court's discretion how much weight an individual § 3553(a) factor should receive. *Clay*, 483 F.3d at 743.

As to Gabriel-Martinez and Castellon-Falcon, the district court did not abuse its discretion by imposing an unreasonable sentence. The district court acknowledged it had considered the correctly calculated advisory Guidelines range as well as the § 3553(a) factors. The district court did not err by not placing more emphasis on Gabriel-Martinez's and Castellon-Falcon's history and characteristics when imposing their sentences, as it was in the court's sound discretion to determine the weight to place on each factor. *See Clay*, 483 F.3d at 743. Their low-end of the Guidelines sentences are reasonable.

**AFFIRMED.**